IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| MARK ANDREW HILDERBRAND, | |
| Plaintiff, | CIVIL ACTION NO.: 6:19-cv-72 |
| v. | |
| MR. BOBBITT, et al., | |
| Defendants. | |

### REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Jeshua Grach's Motion to Dismiss. Doc. 54. Plaintiff filed a Response, opposing Defendant's Motion to Dismiss. Doc. 70. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendant Grach for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal as to this Defendant. Doc. 54. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*. Plaintiff's claims against all other Defendants remain pending.

### PROCEDURAL HISTORY

Plaintiff, an inmate proceeding pro se, bought this suit, asserting claims under 42 U.S.C. § 1983. Docs. 15, 22. After conducting frivolity review, the Court dismissed several of Plaintiff's claims but allowed his Eighth Amendment deliberate indifference claim against Defendant Grach, among others, to proceed. Docs. 36, 52.

In his Amended Complaint, Plaintiff alleges while he was incarcerated at Georgia State Prison ("GSP"), he contracted and was diagnosed with tuberculosis. Doc. 15-1 at 3–4. After initially being prescribed medication, it was discovered Plaintiff was infected with a drug-resistant strain of tuberculosis. Id. at 5. Plaintiff was then prescribed a six-month series of medication but only two months of the medication were actually provided. Id. Plaintiff alleges he wrote several grievances, requesting proper tuberculosis treatment, but these requests were denied. Id. at 6–7. The denial of tuberculosis medication and treatment by Defendant Grach and others forms the basis of Plaintiff's Eighth Amendment deliberate indifference claim against these Defendants.

Defendant Grach argues Plaintiff's deliberate indifference claim should be dismissed because he failed to exhaust available administrative remedies related to his claims against Defendant Grach prior to filing suit. Doc. 54. Alternatively, Defendant Grach argues he is entitled to qualified immunity, as the allegations against Defendant Grach in Plaintiff's Amended Complaint do not rise to deliberate indifference and Plaintiff cannot bring a § 1983 action against independent contractors such as Defendant Grach. Id.

## DISCUSSION

**I.  Plaintiff Failed to Exhaust His Available Administrative Remedies**

**A.  Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a

federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of

administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit.") (quoting Higginbottom, 223 F.3d at 1261). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review compromising the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

B.   **Standard of Review for Exhaustion**

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1214 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory

exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[ ] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The

PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 201 (11th Cir. 2018).  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 201 (quoting Whatley I, 802 F.3d at 1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

6

remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### C. Applying Turner

Defendant argues Plaintiff's claim against Defendant Grach should be dismissed because Plaintiff's grievances do not name Defendant Grach or indicate Defendant Grach denied him treatment. Doc. 54-1 at 9–11. Further, the grievances which Plaintiff did submit were either not in accordance with prison policies or not properly appealed. Id.

#### 1. The Georgia Department of Corrections' ("GDC") administrative remedies.

Georgia State Prison utilizes the GDC procedures for prisoner grievances. Doc. 54-1 at 1. During the relevant time in 2018, the GDC's Standard Operating Procedures ("SOP") provided the statewide grievance procedure. Id.; Doc. 70 at 11. SOP IIB05-001 provides an inmate must file a grievance with his Grievance Coordinator. Doc. 70 at 14, 27–38. The Warden where the inmate is housed must respond within 30 days. Once the Warden responds to an inmate's grievance, an inmate has seven days to appeal the Warden's response to the Commissioner. Id. at 14–15, 28. The Commissioner must respond to a grievance appeal within 100 days of receipt. Id. An appeal to the Commissioner is the final step in GDC's grievance process.

### 2. *Plaintiff did not properly exhaust available administrative remedies.*

Defendant Grach argues dismissal is appropriate because Plaintiff did not properly exhaust his available administrative remedies. Doc. 54. Defendant Grach acknowledges Plaintiff filed several grievances related to his lack of tuberculosis treatment, but none of those grievances relate to any action by him. Doc. 54-1 at 9–11. Indeed, all of those grievances were filed *before* Defendant Grach even started working at Georgia State Prison.

Plaintiff contends he exhausted all available administrative remedies prior to filing this suit. Doc. 70 at 3. Plaintiff asserts his August 22, 2018 grievance (Grievance Number 272963) demonstrates exhaustion for his Eighth Amendment deliberate indifference claim due to denial of treatment for tuberculosis against Defendant Grach. Id. at 5–6, 13–16. Plaintiff explains he also properly appealed this grievance on September 10, 2018. Id. at 6, 14–16. Plaintiff received a denial of his appeal on November 20, 2018, after which Plaintiff filed suit. Id. at 6–7.

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82. Plaintiff's allegations and Defendant's allegations do not conflict. Instead, the parties disagree on the legal implications of Plaintiff's August 22, 2018 grievance as it relates to Defendant Grach.

Defendant Grach argues Plaintiff's grievance fails to demonstrate exhaustion because there are no allegations related to his conduct. Defendant is correct that Plaintiff's grievance does not address Defendant Grach. The grievance fails not just because of the lack of specificity related to Defendant Grach, but because—regardless of specificity—the 2018 grievance could not have provided notice to Defendant Grach or the prison about Defendant Grach's conduct.

Defendant Grach worked at GSP from March 2019 to October 2020. Doc. 54-1 at 3; Doc. 70 at 4. Prior to Defendant Grach working at GSP, Plaintiff filed a grievance related to the lack of treatment he was receiving for tuberculosis.[1] Importantly, Plaintiff's claim against Defendant Grach is that Grach *personally and individually* denied Plaintiff tuberculosis treatment. Doc. 15-1 at 7 (emphases added); see also Doc. 70 at 5. But Plaintiff never mentions Defendant Grach in his grievance—nor could he, as Defendant Grach had not yet started working at GSP when Plaintiff filed his grievance on August 22, 2018.[2] Doc. 54-2 at 5; Doc. 70 at 4.

Plaintiff is not required to explicitly name a defendant in his grievance. See Jones v. Bock, 549 U.S. 199, 219 (2007) (explaining "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances"). But his grievance must still have provided notice of a problem with Defendant Grach's lack of treatment for Plaintiff's purported tuberculosis. Jones, 549 U.S. at 204 ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."); Toennings v. Ga. Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015) ("The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally."). The Eleventh Circuit held in Toennings a Georgia prisoner's failure to name a doctor defendant on his grievance form was fatal to his claim because the grievances, filed and grieved prior to the

---

[1] Although Plaintiff filed various grievances during his time in custody, the parties focus on Plaintiff's August 22, 2018 grievance (Grievance Number 272963) and whether this grievance demonstrates exhaustion. Doc. 54-1 at 11; Doc. 70 at 5–6, 13–16. Thus, the Court will not address Plaintiff's other grievances and instead focuses on whether the 2018 grievance is sufficient.

[2] Plaintiff names Governor Deal, Commissioner Gregory Dozier, Warden Marty Allen, Defendant Dr. Ochippinti, and the Medical Department at GSP in his August 22, 2018 grievance. Doc. 54-2 at 5.

doctor's treatment, did not serve the purpose of putting the prison on notice.  600 F. App'x at 645.  Here, similarly, Plaintiff's grievance, filed before Defendant Grach started working at GSP and prior to Defendant Grach's alleged refusal to treat Plaintiff's tuberculosis, could not have put Grach or the prison on notice as to this Defendant's conduct.  Id. at 649 ("[A] general medical grievance . . . cannot possibly constitute exhaustion against all future [treatment providers.").  Thus, Plaintiff failed to properly exhaust before suing Defendant Grach.

Accordingly, I **RECOMMEND** the Court **GRANT** Defendant Grach's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendant Grach for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal as to this Defendant.  Doc. 54.  Because I have recommended dismissal of Plaintiff's claim against Defendant Grach for failure to exhaust, I decline to address Defendant's other arguments for dismissal.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

10

theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendant Grach's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendant Grach for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal as to this Defendant. Doc. 54. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*. Plaintiff's claims against all other Defendants remain pending.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 1st day of February, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA