## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

MARK ANDREW HILDERBRAND,

        Plaintiff,

    v.

SHARON LEWIS, et al.,

        Defendants.

CIVIL ACTION NO.: 6:19-cv-72

## REPORT AND RECOMMENDATION

In this action, Plaintiff claims he was exposed to tuberculosis and tested positive for the disease while incarcerated at Georgia State Prison in 2010. Plaintiff has not had an active TB infection at any time, but instead, has been diagnosed with "latent tuberculosis infection," or "LTBI." Plaintiff was prescribed treatment for LTBI—treatment that would prevent the infection from becoming active—and he received some of that treatment, but he has not completed a full course of treatment. Plaintiff claims Defendants deprived him of the full course of treatment, and, in doing so were and continue to be deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. The parties filed cross-motions for summary judgment. [1] Docs. 98, 108. The issues are fully briefed and ripe for resolution. Docs. 110, 111, 118.

---

[1] Plaintiff initially filed a Motion for Summary Judgment that was 130 pages long, along with a Motion for Leave to File Excess Pages. Doc. 93; Doc. 95. The Motion for Leave was denied, and Plaintiff was ordered to re-submit his Motion in compliance with the Court's Local Rules. Doc. 97. Plaintiff did so, making the operative Motion for Summary Judgment the one at Docket Number 98. Therefore, I **RECOMMEND** the Court **DENY as moot** Plaintiff's initial, non-compliant Motion for Summary Judgment, doc. 93.

Even viewing the record in the light most favorable to Plaintiff, and making all reasonable inferences in his favor, there is no genuine dispute as to any material fact, and Defendants are entitled to summary judgment.  The facts construed in Plaintiff's favor demonstrate that none of the Defendants named in this suit were deliberately indifferent to Plaintiff's serious medical needs.  Therefore, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment and **DENY** Plaintiff's Motion for Summary Judgment.  I also **RECOMMEND** the Court **DISMISS without prejudice** any claims against the Estate of Dr. Ochippinti.  I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment and **DENY** Plaintiff *in forma pauperis* status on appeal.

## PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff brought this action under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights and his rights under the Georgia Constitution.  See Docs. 15, 22.  Plaintiff alleges he was exposed to a prisoner suffering from an active tuberculosis ("TB") infection while housed in Georgia State Prison ("GSP") sometime in 2010.  Doc. 15-1 at 4.  Plaintiff tested positive for TB on June 10, 2010.  Id.  Plaintiff was prescribed a nine-month course of anti-TB treatment.  Id. at 4–5.  Soon after he was prescribed treatment, Plaintiff alleges officials discovered Plaintiff and other inmates who were being treated for TB were infected with a drug-resistant strain of TB.  Id. at 5.  Plaintiff was prescribed a six-month course of treatment, but he alleges he only received about two months' worth of treatment.  Id.  Plaintiff filed several grievances over the next eight years asking for his previously prescribed TB treatment to be provided.  Id. at 5–6.  As relief, Plaintiff seeks injunctive relief to have his TB treatment restarted and monetary damages.  Id. at 8.

Plaintiff filed this case on August 5, 2019.  Doc. 1.  The Court conducted an initial frivolity review of Plaintiff's Complaint but vacated the Report and Recommendation after Plaintiff amended his Complaint as a matter of course.[2]  Doc. 35.  The Court conducted frivolity review of the Amended Complaint and dismissed all claims against Defendants Carr, Bobbitt, and Sharpe, as well as all claims arising under the Georgia Constitution Article I, § I, ¶¶ II, VII, and XXIX.[3]  See Docs. 36, 52.  The Court ordered service on Defendants Grach, Lewis, Brown, Edwards, Riley, Jones, Veagas,[4] Clements,[5] Millie,[6] Johnson, and the Estate of Dr. Ochippinti.  Doc. 37.  Defendant Grach filed a Motion to Dismiss, which was granted.  Docs. 74; 76.

At this point, Plaintiff asserts two sets of claims: Eighth Amendment deliberate indifference claims and state-law claims under Article I, Section I, Paragraphs I and XVII of the Georgia Constitution.  Doc. 15-1 at 3–8.  Plaintiff asserts both claims against 10 Defendants: Lewis; Brown; Edwards; Riley; Jones; Reeves; Moseley; Villegas; Johnson; and the Estate of Dr.

---

[2]     In his Second Amended Complaint, Plaintiff did not assert claims against Defendants Georgia Department of Corrections ("GDC"), GSP, Ward, Kemp, and Reno.  Doc. 22.  Those Defendants were removed from the docket by the Clerk of Court.  See Doc. 36 at 1 n.1.

[3]     Defendants' counsel mistakenly answered for Defendant Bobbitt, although he was already dismissed from this action due to Plaintiff's failure to state a claim against him.  See Doc. 36 at 6; Doc. 52.  Since Defendant Bobbitt was already dismissed from this case, I do not consider the arguments made on his behalf.  The Court **DIRECTS** the Clerk of Court to **TERMINATE** Bobbitt as a Defendant upon the docket and record of this case.

[4]     The correct spelling of Defendant Veagas' name is Villegas.  See Doc. 108-33 at 1.  The Court **DIRECTS** the Clerk of Court to correct the spelling on the docket.  Defendant Veagas shall be referred to here as Defendant Villegas.

[5]     Defendant Jessica Clements is now known as Jessica Moseley and will be referred to here as Defendant Moseley.  Doc. 108-27 at 1.  The Court **DIRECTS** the Clerk of Court to update this Defendant's name on the docket.

[6]     Defendant Millie's full name is Millie Reeves and will be referred to here as Defendant Reeves.  Doc. 108-29 at 1.  The Court **DIRECTS** the Clerk of Court to update this Defendant's name on the docket.

Ochippini.  Id.  All of Plaintiff's claims are based on the theory Defendants deprived him of a full course of treatment for his LTBI over the last 10 years.[7]  Id.

Specifically, Plaintiff alleges he spoke to Defendants Brown, Edwards, Riley, Jones, Moseley, Villegas, Johnson, and Dr. Ochippini several times about obtaining appropriate treatment, but they ignored his complaints, despite the risk of his LTBI turning into active TB. Id. at 7.  Plaintiff alleges Defendant Lewis was aware of his inadequate treatment because she denied his grievance appeals.  Id. at 6–7.  Plaintiff alleges Defendant Reeves was aware of his LTBI but refused to properly treat his LTBI on two separate occasions.  Doc. 22 at 5–6.  As relief, Plaintiff seeks an injunction ordering prison officials to provide him adequate medical care, as well as compensatory, nominal, and punitive damages.  Doc. 15 at 5; Doc. 15-1 at 9; Doc. 22 at 8.

---

[7]      Defendants suggest Plaintiff may have intended to assert an additional claim based on his initial exposures to TB sometime in 2009 to 2011 (as opposed to claims based on lack of treatment after the initial exposure).  The Court has reviewed Plaintiff's Complaint and does not construe the Complaint to assert a claim based on exposure.  Even if Plaintiff had intended to assert such a claim, it would fail for numerous reasons.  First, such a claim would be time-barred.  The statute of limitations for § 1983 cases in Georgia is two years.  See Flowers v. Fulton Cnty. Sch. Sys., 654 F. App'x 396, 401 (11th Cir. 2016) ("It is . . . well-settled that § 1983 claims filed in Georgia are governed by the same two-year statute of limitations for personal-injury actions.") (citing Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986)).  Plaintiff filed his initial Complaint more than seven years after his alleged exposure to TB.  The "continuing violation" exception to the statute of limitations does not apply here.  "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does."  Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (quoting Knight v. Columbus, 19 F.3d 579, 580–81 (11th Cir. 1994)) (cleaned up).  Plaintiff complains about the present consequences of the initial exposures in 2009 to 2011, not continually being exposed to TB.  Thus, the statute of limitations would not be extended.  Second, there is no evidence in the record Defendants exposed Plaintiff to an inmate with TB.  Most of these Defendants were not working at GSP at the time Plaintiff was exposed to TB.  See Doc. 108-22 at 1 (Defendant Jones began work at GSP in 2020); Doc. 108-26 at 1 (Defendant Riley began work at GSP in 2018); Doc 108-8 at 1 (Defendant Edwards began work at GSP in 2018); Doc 108-27 at 1 (Defendant Moseley began work at GSP in 2015); Doc. 108-33 at 1 (Defendant Villegas began work at GSP in 2015); Doc. 108-29 (Defendant Reeves was based at ASMP during the relevant time); Doc. 108-23 at 1 (Dr. Lewis has been the Statewide Medical Director for GDC since 2009 and was not assigned to GSP).  Defendants Brown and Johnson were assigned to GSP at this time, but Plaintiff offers no evidence these Defendants were involved in any way with his exposure to TB.

Plaintiff now moves for summary judgment.  Doc. 98.  The remaining Defendants, apart from the Estate of Dr. Ochippinti, which has not been served, responded in opposition to Plaintiff's Motion for Summary Judgment and Plaintiff's Statement of Material Fact ("SMF").  Docs. 110, 111.  Defendants filed their own Motion for Summary Judgment.  Doc. 108.  Plaintiff responded, but that response is limited to responding to Defendants' SMF and does not contain any discernible substantive legal argument.  Doc. 118.

## UNDISPUTED MATERIAL FACTS

Local Rule 56.1 of the Southern District of Georgia provides a party moving for summary judgment must include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof."  Local R. 56.1.  Both parties submitted statements of material fact in support of their respective motions for summary judgment in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1.  Doc. 98 at 8–16; Doc. 108-2.

It is important to note that specific facts pleaded in a sworn complaint must be considered for the purposes of summary judgment, and Plaintiff has submitted a sworn complaint.  Doc. 15; Sconiers v. Lockhart, 946 F.3d 1256, 1262 (11th Cir. 2020); see also Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) ("We also credit the specific facts pled in [a Plaintiff's] sworn complaint when considering his opposition to summary judgment.") (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014)).  However, to the extent sworn statements are "blatantly contradicted by the record, blatantly inconsistent, or incredible as a

matter of law" the statements may be discounted  for the purposes of summary judgment.  See Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013).

   Plaintiff's SMF relies on the following items: (1) a definition of active tuberculosis contained in O.C.G.A. § 31-14-1; (2) six grievances Plaintiff filed during his incarceration (Grievance Numbers 61234, 105749, 180904, 206291, 245521, and 272963), and decisions, appeals, and appeal decisions on those grievances; (3) Defendant Johnson's Answer; and (4) Plaintiff's written recollection of what GDC Commissioner Ward said to Plaintiff when they spoke about his medical needs.[8]  Doc. 100.  Defendants responded to Plaintiff's SMF, admitting some and denying some of Plaintiff's factual assertions.  See Docs. 110-1, 111.  The admitted factual allegations are considered true for purposes of summary judgment.  Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (finding, under Local Rule 56.1 and Eleventh Circuit precedent, "all unopposed fact statements supported by the evidentiary materials of record are deemed admitted").

   Defendants' SMF relies on declarations from Defendants Edwards, Jones, Riley, Lewis, Moseley, Villegas, Brown, Reeves, and Johnson and former Defendant Bobbitt as well as exhibits attached to those declarations.  Docs. 108-4 to 108-35.  Plaintiff filed a response to Defendants' SMF, but that submission fails to address the vast majority of the facts asserted in Defendants' SMF.  Doc. 118.  Plaintiff's response consists largely of Plaintiff's recitation of various policies and regulations related to medical care generally and in penological institutions. Plaintiff does address some specific facts asserted in Defendants' SMF.  The facts Plaintiff admits are considered true for purposes of summary judgment.  Scoggins, 92 F. Supp. 2d at 1373

---

[8]      Plaintiff describes this document as a "Notarized Sworn Affidavit of G.D.C. Commissioner Timothy C. Ward's statements to plaintiff."  Doc. 100 at 39 (citing to Doc. 70 at 23).  The document is actually Plaintiff's own affidavit recounting his and Commissioner Ward's conversation.  See Doc. 70 at 23–24.

n.1.  Plaintiff disputed some facts but failed to support many his assertions with citations to the record.  See, e.g., Doc. 118 at 32 (Defendants' SMF paragraph 96 asserts certain Defendants had no recollection of speaking with Plaintiff about his TB treatment; Plaintiff asserts the Defendants and Plaintiff did have conversations about TB, but Plaintiff provides no support in the record, and he fails to provide any details about the dates, times, locations, or other circumstances of those purported conversations).  For some allegations, Plaintiff did not dispute the fact asserted but argued Defendants' actions were not in compliance with certain policies.  See, e.g., Doc. 118 at 23 (in disputing Defendants' SMF Number 3, arguing Defendants failed to comply with Standard Operating Procedures Numbers 507.04.54, 507.04.55, 507.04.70 and Clinical Update 04.01).  Plaintiff's responses to these allegations are not responsive.  In light of these circumstances, and after reviewing the parties' submissions, the Court identifies the following undisputed, material facts for the purposes of evaluating the parties' Motions for Summary Judgment:

TB is an infectious disease usually caused by Mycobacterium tuberculosis bacteria. Doc. 108-2 at 2.  TB generally affects the lungs but can also affect other parts of the body.  Id. People with active TB may display some typical symptoms, such as an active cough that lasts more than three weeks with occasional mucus containing blood, fever, night sweats, and weight loss.  Id. at 3.  If TB infects other organs, a broader range of symptoms may occur.  Id.  Persons infected with TB who show no symptoms are described as having latent tuberculosis infection ("LTBI").  Id. at 2.  TB is spread from one person to the next through the air when people with active TB in their lungs cough, spit, speak, or sneeze.  Id. at 3.  People with LTBI do not spread the disease.  Id.  People are tested for TB through a skin test, formerly known as a PPD skin test

and now known as a Tuberculin Skin Test.  Id.  This kind of test is an intradermal test which reveals whether an individual has been exposed to TB but not if they have active TB.  Id.

To prevent LTBI from progressing into active TB, the Centers for Disease Control ("CDC") recommends Isoniazid ("INH") as the primary medication.  Id. at 4.  While not guaranteed, it is more likely than not a successful completion of INH treatment will prevent a progression of LTBI to active TB.  Id.  Infected individuals receive either a daily dose of INH for 270 consecutive days or 76 bi-weekly doses of INH.  Id.  Vitamin B-6 is given with INH to minimize peripheral neuropathy, a possible side-effect of INH therapy.  Id.  Further, a patient taking INH therapy must receive Aspartate Aminotransferase Tests ("AST"), which measure certain liver functions, as INH therapy can raise AST levels to dangerously high numbers.  Id. at 9.  If an individual is exposed to an INH-resistant strain of TB, the CDC recommend the person be treated with Rifampin.  Id.  at 4.

Plaintiff is a Georgia Department of Corrections prisoner, and during the time relevant to his claims, he was housed at GSP.  Doc. 98 at 10; Doc. 108-2 at 33.  On June 7, 2010, Plaintiff was given a PPD test, which showed Plaintiff had been exposed to TB bacteria.  Doc. 108-2 at 3.  On August 6, 2010, Plaintiff underwent a chest x-ray.  Id.  On August 17, 2010, Plaintiff was seen in the GSP medical department, where the treating physician noted Plaintiff had no symptoms of active TB and started Plaintiff on INH and Vitamin B-6 for LTBI treatment.  Id. at 3–4.  Plaintiff elected to take the 76 bi-weekly doses of INH (as opposed to a daily dose for 270 consecutive days).  Id. at 4.

On September 28, 2010, Plaintiff was seen by Defendant Brown for a LTBI follow-up exam.  Id. at 5.  Defendant Brown noted Plaintiff had no TB symptoms.  Id.  Defendant Brown further noted Plaintiff started his 76 doses of INH on August 23, 2010, and had taken 10 doses as

of the September 28, 2010 exam.[9] Id.  On November 11, 2010, Plaintiff had another LTBI follow-up exam with Defendant Brown.  Id.  Defendant Brown found Plaintiff had no TB symptoms and noted Plaintiff had only taken 13 bi-weekly doses of INH since starting therapy on August 23, 2010.  Id.  On December 2, 2010, Defendant Brown saw Plaintiff for a periodic health assessment.  Id. at 6.  Defendant Brown noted Plaintiff had no complaints, no symptoms from TB, and a normal periodic health assessment screening.  Id.  An x-ray of Plaintiff's chest was also taken, which demonstrated Plaintiff had clear lungs.  Id.

On December 8, 2010, Plaintiff's first attempt to complete INH therapy was discontinued.[10]  Id.  On December 28, 2010, a physician's order was written indicating Plaintiff wanted to reinstate his INH therapy.  Id.  On January 5, 2011, a physician's order was written reinstating Plaintiff's INH therapy.  Id. at 6–7.  On January 10, 2011, Defendant Brown saw Plaintiff for a LTBI follow-up, during which Defendant Brown noted Plaintiff had no TB symptoms and Plaintiff had taken 19 bi-weekly doses of INH.  Id. at 7.  On January 31, 2011, Plaintiff's second attempt to complete INH therapy was discontinued.  Id.

On February 18, 2011, Defendant Brown saw Plaintiff for a periodic health assessment. Id.  During the assessment, Defendant Brown noted Plaintiff had no complaints of TB symptoms and a normal periodic health screening assessment.  Id.  On July 15, 2011, a GSP nurse saw

---

[9]     Plaintiff states in his SMF he completed his first course of INH treatment that he was prescribed. Doc. 98 at 10.  This statement is contrary to Plaintiff's Complaint as well as his own medical records. Doc. 15-1 at 4–5; Doc. 108-7 at 5.  The Court treats this statement in Plaintiff's SMF as a typographical error.  Moreover, if he had completed the first course of INH treatment, that fact would seriously undermine Plaintiff's claims Defendants were deliberately indifferent to his exposure to TB.

[10]     The parties dispute exactly why Plaintiff's LTBI treatments were discontinued.  Defendants unequivocally state treatment was discontinued due to Plaintiff's non-compliance with the treatment. Doc. 108-2 at 6, 7, 10–11.  Plaintiff argues his treatment was discontinued randomly.  Doc. 98 at 10–12, Doc. 118 at 24.  This dispute does not change the outcome of the Motions because, as explained below, Plaintiff presents no evidence Defendants acted with deliberate indifference or that he suffered an injury as a result.

Plaintiff for a periodic health assessment, during which Plaintiff had no symptoms from TB.  Id. at 8.  On September 13, 2011, Plaintiff had another x-ray, which revealed no active TB.  Id.  On September 15, 2011, a GSP nurse saw Plaintiff for a periodic TB Screening and Health Assessment.  Id.  The nurse noted Plaintiff started INH therapy for the third time on that date. Id.  That same day, a physician's order was written for Plaintiff to be referred to the INH clinic. Id.  On September 16, 2011, a physician's order was written for Plaintiff to receive 76 bi-weekly doses of INH, as well as Vitamin B-6.  Id. at 9.

On September 30, 2011, Defendant Brown saw Plaintiff for a LTBI follow-up.  Id. Defendant Brown noted Plaintiff complained of a cough and night sweats and noted elevated AST levels.  Id.  Plaintiff was referred to a clinician for an evaluation of his AST levels.  Id.  On October 4, 2011, Plaintiff was seen by a physician's assistant, who confirmed Plaintiff's elevated AST levels and returned him to the Infectious Disease ("ID") Clinic for further evaluation.  Id. On October 20, 2011, a physician's order was written stopping Plaintiff's INH therapy pending consult with the ID Clinic.  Id.

On November 7, 2011, Plaintiff was sent to Augusta State Medical Prison ("ASMP").  Id. Defendant Reeves saw Plaintiff for an evaluation of his LTBI treatment.  Id.  Defendant Reeves reviewed Plaintiff's history of LTBI treatment, as well as his recent AST levels.  Id. at 10. Plaintiff received a chest x-ray, which showed no evidence of active TB.  Id. at 11.  On

November 8, 2011, a physician's order was written discontinuing Plaintiff from LTBI treatment. Id.

On December 1, 2011, Plaintiff was seen at the GSP medical department, and the treating nurse practitioner noted Plaintiff had been exposed to INH-resistant TB.[11] Id. Plaintiff had another x-ray of his chest, which showed clear lungs and no evidence of active TB. Id. at 12. On December 13, 2011, medical officers with the GSP Seizure Clinic saw Plaintiff, and the treating physician ordered Plaintiff start Rifampin for four months for his LTBI treatment. Id. On February 12, 2012, Defendant Brown saw Plaintiff for a periodic TB screening and health assessment, in which she noted Plaintiff was currently on Rifampin, had no TB symptoms, and a normal periodic health assessment screening. Id. On December 2, 2012, Defendant Brown saw Plaintiff for a periodic TB screening and health assessment. Id. Defendant Brown noted Plaintiff had been on therapy for TB various times. Id. Defendant Brown did not check whether Plaintiff was currently taking either INH or Rifampin, but it was noted he had no TB symptoms and a normal periodic health assessment screening. Id. at 13.

Defendant Brown saw Plaintiff five more times from 2014 to 2019 for periodic TB screening and health assessments. Id. at 13–14. Defendant Brown noted on all occasions that Plaintiff had no TB symptoms and had normal periodic health screenings. Id. On February 17, 2020, Plaintiff was sent to Augusta University ("AU") for a seizure evaluation. Id. at 15. Plaintiff informed the staff at AU he had been exposed to an INH-resistant strain of TB. Id.

---

[11] There is ambiguity in the record about whether Plaintiff was exposed only once to TB, which later turned out to be an INH-resistant strain, or if Plaintiff was exposed twice, once to regular TB in 2009 and once to INH-resistant TB in 2011. The parties appear to accept it was two separate exposures. See Doc. 108-1 at 29 n.21; Doc. 98 at 10. For the purposes of summary judgment, the Court concludes Plaintiff was exposed to TB twice.

Because Plaintiff had symptoms that could be associated with TB and there was no documentation of treatment, AU sent Plaintiff to ASMP to rule out active TB.  Id.

Plaintiff stayed at ASMP until February 17, 2020.  Id.  After extensive testing during his time at ASMP, the ASMP medical staff and Defendant Reeves concluded Plaintiff did not have active TB.  Id.  ASMP medical staff came to this conclusion based upon a normal chest x-ray, no symptoms of active TB, and three negative sputum AFB ("Acid-Fast Bacillus") smears.  Id.

To sum up, Plaintiff was exposed to TB first in 2009 or 2010.  Plaintiff was promptly treated with INH for LTBI, though it appears that course of treatment was not completed.  Plaintiff was then exposed to INH-resistant TB in 2010 or 2011.  Soon after this second exposure, Plaintiff was prescribed Rifampin.  Plaintiff started that treatment, but the treatment was discontinued before it was complete.  Between the first exposure and the time Plaintiff filed suit, Plaintiff has been seen by multiple medical providers, and those providers have considered Plaintiff's requests to restart treatment and those providers elected to either restart treatment or discontinue treatment.  Plaintiff disagrees with the bases for those determinations.  Plaintiff has never had active TB, and he does not claim he has.  Rather, he asserts he remains at risk of his LTBI becoming active TB and he should be allowed to complete the initially prescribed course of LTBI treatment.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury

question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

Defendants argue they should be granted summary judgment on several grounds. Doc. 108-1 at 25–35.  Defendants argue Plaintiff has presented no evidence showing that any Defendant acted with deliberate indifference.  Id. at 25.  Further, even if Plaintiff could show Defendants acted with deliberate indifference, Plaintiff did not exhaust his administrative

remedies and is not entitled to compensatory damages or injunctive relief.  Id. at 29, 31, 34.

Defendants also argue they are entitled to qualified immunity and Plaintiff cannot sustain a claim

against them under the Georgia Constitution.  Id. at 32.  Defendants also argue the Estate of Dr.

Ochippinti should be dismissed from the case under Federal Rule of Civil Procedure 4(m).  Id. at

35.

Plaintiff argues he should be granted summary judgment, though the scope and basis for

his request are unclear.  It appears Plaintiff seeks summary judgment on all of his claims and all

of the relief sought because the evidence in the record shows Defendants were deliberately

indifferent to his medical needs by failing to provide him with the full course of treatment for

LTBI.  Doc. 98 at 21–22.

## I.    Defendants Are Entitled to Summary Judgment on Plaintiff's Eighth Amendment Claims for Deliberate Indifference

Defendants argue Plaintiff is unable to show any Defendant acted with deliberate

indifference toward his LTBI.  Doc. 108-1 at 26.  Even if Plaintiff could show a Defendant acted

with deliberate indifference, Defendants argue Plaintiff cannot demonstrate he suffered any

injury from his LTBI treatment.  Id. at 27.

### A.    Legal Standard

The United States Supreme Court has interpreted the Eighth Amendment to prohibit

deliberate indifference to serious medical needs of prisoners.  Estelle v. Gamble, 429 U.S. 97,

102 (1976).  To prove a deliberate indifference to medical treatment claim, a plaintiff must

demonstrate: (1) a serious medical need; (2) deliberate indifference to the need; and (3) a causal

connection between the constitutional violation and plaintiff's injury.  Hoffer v. Secy., Fla. Dep't

of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020).  The first element is an objective inquiry.

Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  A serious medical need "is one

that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quotation and citation omitted).

The second element is a subjective inquiry. Id. To show defendants' deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) a disregard of that risk; (3) by conduct that is more than mere negligence." Id. at 1327 (citation omitted). In considering a deliberate indifference claim, "each individual Defendant must be judged separately and on the basis of what that person knows." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008). "Since a finding of deliberate indifference requires a finding of the defendant's subjective knowledge of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (quoting Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999)).

Conduct that is more than mere negligence can include grossly inadequate care, a decision to take a less effective but easier course of treatment, or completely cursory medical care that amounts to no treatment at all. Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Accordingly, a mere medical malpractice claim does not amount to a constitutional violation. Estelle, 429 U.S. at 104. Medical prison officials are entitled to utilize their medical judgment when treating inmates. See id. at 107. Accordingly, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" also does not amount to a constitutional violation. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Prison officials cannot be held liable under the Eighth Amendment when they provide an inmate with treatment, but the inmate simply prefers a different mode or method

of treatment.  Sifford v. Ford, 701 F. App'x 794, 795 (11th Cir. 2017).  Relatedly, a doctor's decision to prescribe a certain type of medication over another is generally a matter of medical judgment that cannot subject the doctor to § 1983 liability.  See Bauer v. Kramer, 424 F. App'x 917, 919 (11th Cir. 2011) (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995)).

### A.    Plaintiff Has Not Presented Any Evidence He Suffered Any Injury

Defendants argue Plaintiff has failed to point to any evidence showing he suffered an injury as a result of alleged deliberate indifference.  Doc. 108-1 at 27–28.  Plaintiff argues he is at greater risk of developing active TB and that his life would be seriously threatened by his INH-resistant TB.  Doc. 98 at 24.

The third element of deliberate indifference requires a plaintiff to prove a causal connection between the constitutional violation and the plaintiff's injury.  Hoffer, 973 F.3d at 1270.  Courts are reluctant to find harm where a plaintiff with LTBI does not develop active TB.  See Matthews v. White, No. CA 11-00514, 2013 WL 1890737, at *4 n. 12 (S.D. Ala. Apr. 9, 2013) ("Where inmates have been exposed to TB but do not contract an active form of the disease, courts are reluctant to find harm; furthermore, when exposed inmates receive treatment that protects them from contracting later, contagious, stages of the disease, courts rarely find deliberate indifference to establish a constitutional violation."), report and recommendation adopted, 2013 WL 1891356 (S.D. Ala. May 6, 2013) (citing Combs v. Nelson, 419 F. App'x 884, 887 (11th Cir. 2011), Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001), and Gooden v. Haley, No. CA 99-0611, 2000 WL 206634, at *4 (S.D. Ala. Feb. 14, 2000)).

Plaintiff does not point to any evidence in the record establishing he suffered from any injuries associated with the alleged lack of treatment.  Defendants, in contrast, provide evidence Plaintiff has no injury resulting from the lack of treatment of Plaintiff's LTBI.  The record shows Plaintiff never developed active TB, even though his INH and Rifampin treatment were

discontinued.  Plaintiff's x-rays showed normal lungs throughout the period embraced in the

Complaint.  Plaintiff has pointed to no authority that suggests a mere risk of LTBI becoming

active TB at some point in the future constitutes an injury sufficient to sustain a deliberate

indifference claim, and the weight of the authority suggests it is not.  See Matthews, 2013 WL

1890737.  Without any evidence of injury, Plaintiff cannot establish the third element of a

deliberate indifference claim, which requires a causal connection between the constitutional

violation and a plaintiff's injury.  Goebert, 510 F.3d at 1326.

> **B.    Plaintiff Has Not Presented Any Evidence Any Defendant Was Deliberately Indifferent to His Medical Needs**

Each Defendant argues there is no evidence in the record showing they acted with

deliberate indifference.  Doc. 108-1 at 26–27.  To show Defendants' deliberate indifference,

Plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) a disregard of that

risk; (3) by conduct that is more than mere negligence."  Goebert, 510 F.3d at 132 (citation

omitted).  The Court addresses each Defendant moving for summary judgment.

> ### *1.    Defendant Reeves*

Defendant Reeves is the Statewide Tuberculosis Coordinator of GDC, based at ASMP.

Doc. 108-29 at 1.  On November 7, 2011, Defendant Reeves personally examined Plaintiff,

reviewed his history of TB treatment, and reviewed his medical history.  Id. at 9.  Plaintiff was

also given a chest x-ray that showed normal lungs and no active TB.  Id. at 10.  Defendant

Reeves recommended Plaintiff's LTBI treatment be discontinued based on Plaintiff's history of

incomplete treatments, his elevated liver functions, his lack of active TB symptoms, the low

chance Plaintiff would actually develop active TB, and the possibility the medications could

further damage Plaintiff's liver.  Id. at 9.  Defendant Reeves saw Plaintiff again from February

17 to February 24, 2020, when he arrived at ASMP to rule out active TB.  Id. at 14.  Defendant

Reeves monitored Plaintiff's testing and, in conjunction with other medical staff, concluded Plaintiff did not have active TB.  Id.

Plaintiff presents no evidence to show Defendant Reeves disregarded a serious risk to his life.  Indeed, the record shows the opposite—Defendant Reeves, on two occasions, carefully tested and observed Plaintiff to ensure he had not developed active TB.  "Medical treatment [is deliberately indifferent] only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal quotation marks and citation omitted).  For this reason alone, Defendant Reeves is entitled to summary judgment on Plaintiff's deliberate indifference claim.

Plaintiff also does not provide evidence Defendant Reeves' conduct was anything beyond mere negligence.  Plaintiff has not produced any evidence showing the medical treatment he received from Defendant Reeves was grossly incompetent or inadequate.  Plaintiff also fails to offer evidence he should have still been given a full course of INH or Rifampin, despite the risk to his liver.  Given these undisputed facts, Plaintiff's claim amounts to a mere disagreement with Defendant Reeves on the course of treatment, which does not constitute an Eighth Amendment violation.  See Monteleone v. Corizon, 686 F. App'x 655, 659 (11th Cir. 2017) ("[D]etermining which medication to prescribe is generally a matter of medical judgment, and [Plaintiff] was required to do more than question [Defendant's] medical judgment to overcome a summary judgment ruling on his § 1983 claim.") (citing Estelle, 429 U.S. at 107)).  Even if Defendant Reeves were incorrect in her conclusions, such determinations would amount, at most, to medical malpractice.  Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999) (explaining medical

malpractice cannot form the basis for Eighth Amendment liability).  For this reason, Plaintiff cannot show Defendant Reeves disregarded a serious risk by conduct beyond mere negligence.

Plaintiff has presented no evidence in support of his claims against Defendant Reeves and Defendants have provided evidence indicating Defendant Reeves was not deliberately indifferent.  Thus, no dispute of material fact exists, and Defendant Reeves is entitled to summary judgment

### 2.      *Defendant Brown*

Defendant Brown is the Infection Control Nurse at GSP.  Doc. 108-5 at 1.  The record shows Defendant Brown saw Plaintiff on a regular basis for LTBI follow-ups and then on a yearly basis for TB screening.  Id. at 4–9.  On those occasions, Defendant Brown noted Plaintiff had no active TB symptoms and normal periodic health assessments.  Id.

Plaintiff presents no evidence to show Defendant Brown disregarded a serious risk to his life.  The record shows Defendant Brown constantly monitored Plaintiff's LTBI, even after the discontinuance of his medication, to ensure Plaintiff did not develop active TB.  Defendant Brown was not disregarding a risk to Plaintiff's life—rather, she was actively ensuring Plaintiff would receive prompt treatment if he developed active TB.  See Hoffer, 973 F.3d at 1272 (concluding prison officials were providing at least minimally adequate care by monitoring inmates with early stages of Hepatitis-C and treating them when their condition progresses).

Plaintiff also presents no evidence Defendant Brown's conduct was anything beyond mere negligence.  Plaintiff alleges Defendant Brown failed to follow prison policy in handling his alleged non-compliance with his medication and not completing the full course of INH treatments.[12]  See Doc. 118 at 24, 25.  However, "failure to follow procedures does not, by itself,

---

[12]      Plaintiff's allegations in this regard are conclusory.  Plaintiff does not adequately explain how Defendant Brown actually violated any prison policy.

rise to the level of deliberate indifference because doing so is at most a form of negligence." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000), see also Nam Dang by and through Vina Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1282 (11th Cir. 2017) ("A violation of Jail policy does not in itself rise to the level of deliberate indifference.").

Plaintiff has presented no evidence showing Defendant Brown was deliberately indifferent, and Defendant Brown has presented evidence he was not.  Thus, Defendant Brown is entitled to summary judgment

### 3.   *Defendant Riley*

Defendant Riley was a Nurse Practitioner at GSP from March 2018 to March 2022. Doc. 108-26 at 1. The record shows Defendant Riley believed Plaintiff was receiving adequate medical care for his LTBI at all relevant times.  Id. at 1–2.

Deliberate indifference requires "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment." Howell v. Evans, 922 F.2d 712, 721 (11th Cir. 1991).  Plaintiff presents no evidence Defendant Riley knew there was necessary treatment beyond what Plaintiff was already receiving.  Plaintiff also does not provide any evidence of Defendant Riley's conduct which arose beyond mere negligence.

Plaintiff has presented no evidence in support of his claims against Defendant Riley, and Defendants have provided evidence indicating Defendant Riley was not deliberately indifferent. Thus, Defendant Riley is entitled to summary judgment

### 4.   *Defendant Jones*

Defendants Jones was a Nurse Practitioner at GSP from January 2020 to June 2021. Doc. 108-22 at 1.  The record shows Defendant Jones believed Plaintiff was receiving adequate medical care for his LTBI at all relevant times.  Id. at 1–2.

Plaintiff presents no evidence Defendant Jones knew there was necessary treatment beyond what Plaintiff was already receiving.  See Howell, 922 F.2d at 721.  Plaintiff also does not provide any evidence of Defendant Riley's conduct which arose beyond mere negligence.

Plaintiff has presented no evidence in support of his claims against Defendant Jones, and Defendants have provided evidence indicating Defendant Jones was not deliberately indifferent. Thus, Defendant Jones is entitled to summary judgment.

### 5.    *Defendant Villegas*

Defendants Villegas was a CID Investigator at GSP from November 2015 to April of 2020. [13]  Doc. 108-33 at 1.  Defendant Villegas did not have any formal medical education and was not authorized to provide medical care for inmates.  Id.  Plaintiff disclosed his concerns about his treatment to Defendant Villegas.  Id. at 2.  Defendant Villegas then went to speak with Defendant Brown to inquire about Plaintiff's treatment for TB.  Id.  Defendant Villegas left that discussion believing Plaintiff was receiving adequate care.  Id.

"Prison officials are not deliberately indifferent when they rely on a [medical] professional's determination of the treatment needed."  Lynch v. Jackson, Civil Action No. 1:09-cv-3306, 2011 WL 13176833, at *5 (N.D. Ga. Mar. 2, 2011) (citing Acosta v. Watts, 281 F. App'x 906, 908 (11th Cir. 2008), and Howell v. Burden, 12 F.3d 190, 191 (11th Cir. 1994)). Plaintiff does not point to any evidence indicating Defendant Villegas disregarded a serious risk of harm.  To the contrary, the record shows Defendant Villegas acted to determine if Plaintiff's concerns were valid.  When Plaintiff informed Defendant Villegas about his concerns about his TB care, Defendant Villegas went straight to a medical professional to inquire about Plaintiff's

---

[13]     The parties do not spell out CID in their submissions, but the Court assumes this is a reference to the Georgia Department of Corrections' Criminal Investigations Division.  The meaning of CID is not material to resolution of these Motions.

treatment.  Plaintiff has not presented any evidence that Defendant Villegas disregarded Plaintiff medical needs in any way.

Plaintiff also does not offer evidence of conduct beyond mere negligence.  Defendant Villegas verified Plaintiff was receiving appropriate treatment with Defendant Brown.  In doing this, Defendant Villegas relied on Defendant Brown's professional knowledge and determination Plaintiff was receiving the necessary treatment.  See Lynch, 2011 WL 13176833, at *5. Defendant Villegas, therefore, did not in any way that was more than negligent, and he was not deliberately indifferent to Plaintiff's medical needs.

Plaintiff has presented no evidence in support of his claims against Defendant Villegas, and Defendants have provided evidence indicating Defendant Villegas was not deliberately indifferent.  Thus, and Defendant Villegas is entitled to summary judgment.

### 6.   *Defendant Moseley*

Defendant Moseley was a CID Investigator at GSP from October 2015 to April 2018. Doc. 108-27 at 2.  She was responsible for copying relevant medical records for grievance appeals filed by GSP inmates.  Id. at 2.  Defendant Moseley was in charge of sending copies of Plaintiff's medical records in conjunction with certain grievances.  Id. at 2–3.

Plaintiff presents no evidence showing Defendant Moseley disregarded a risk of serious harm.  Defendants present evidence showing Defendant Moseley believed Plaintiff was receiving appropriate medical care.  See Doc. 108-27 at 3 ("At no time since I began working for the GDC have I ever believed or had any reason to believe [Plaintiff] was receiving inadequate or inappropriate medical care.").

Plaintiff has presented no evidence in support of his claims against Defendant Moseley, and Defendants have provided evidence indicating Defendant Moseley was not deliberately indifferent.  Thus, Defendant Moseley is entitled to summary judgment.

### 7. *Defendant Johnson*

Defendant Johnson was a corrections officer at GSP from December 2008 to February 2021.  Doc. 108-21 at 1.  The record shows Defendant Johnson believed Plaintiff was receiving adequate medical care for his LTBI.  Id. at 2.

Plaintiff provides no evidence to show Defendant Johnson disregarded a risk of serious harm or that Defendant Johnson acted with conduct that rose above mere negligence.  Defendants have offered contrary evidence showing Defendant Johnson thought the medical care Plaintiff was receiving was appropriate and he did not act with deliberate indifference.  Thus, Defendant Johnson is entitled to summary judgment.

### 8. *Defendant Edwards*

Defendant Edwards was the Chief Counselor and the Deputy Warden of Care at GSP from March 2018 to March 2022.  Doc. 108-8 at 1.  The record shows Defendant Jones believed Plaintiff was receiving adequate medical care for his LTBI.  Id. at 2.

Plaintiff presents no evidence showing Defendant Edwards disregarded a risk of serious harm, or that she acted with conduct that rose above mere negligence.  Defendants have offered evidence showing Defendant Edwards thought the medical care Plaintiff was receiving was appropriate and she did not act with deliberate indifference.  Thus, Defendant Edwards is entitled to summary judgment.

### 9. *Defendant Lewis*

Defendant Lewis is the Medical Director for GDC.  Doc. 108-23 at 1.  As part of her job, Defendant Lewis oversaw the medical grievance appeals.  Id. at 2.  The record shows Defendant Lewis, in denying Plaintiff's medical grievance appeals, believed Plaintiff was receiving adequate medical treatment for his LTBI.  Id. at 3.  Plaintiff offers no contrary evidence Defendant Lewis determined otherwise and disregarded that risk.  Plaintiff also points to no

evidence showing Defendant Lewis' conduct was beyond mere negligence.  Plaintiff has failed

to present any evidence Defendant Lewis was deliberately indifferent to a substantial risk of

harm to Plaintiff.

Plaintiff appears to argue Defendant Lewis is liable because various medical personnel at

GDC facilities, including GSP, failed to treat inmates with LTBI in accordance with Clinical

Update 04.01.  Doc. 118 at 33.  This argument is unconvincing.  "It is well established in this

Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their

subordinates on the basis of *respondeat superior* or vicarious liability."  Cottone v. Jenne, 326

F.3d 1352, 1360 (11th Cir. 2003).  "A plaintiff seeking to hold a supervisor liable for

constitutional violations must show that the supervisor either participated directly in the

unconstitutional conduct or that a causal connection exists between the supervisor's actions and

the alleged constitutional violation."  Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014)

(citing Cottone, 326 F.3d at 1360).  As addressed above, Plaintiff presents no evidence

Defendant Lewis engaged in any unconstitutional conduct herself.  Plaintiff also points to no

evidence in the record to suggest a causal connection between Defendant Lewis' actions and the

alleged failure to treat his TB.

In sum, Defendants have established no genuine issue of material fact exists that any

Defendant was not deliberately indifferent to Plaintiff's LTBI.  Accordingly, I **RECOMMEND**

the Court **GRANT** Defendants' Motion for Summary Judgment and **DENY** Plaintiff's Motion

for Summary Judgment.[14]

---

[14]      Defendants also seek summary judgment on Plaintiff's § 1983 claims on the following grounds:
qualified immunity; Plaintiff's failure to exhaust administrative remedies; and the recoverability of
compensatory damages under the Prison Litigation Reform Act ("PLRA").  Doc 108-1 at 31, 32, 34.
Because the Court concludes Defendants were not deliberately indifferent to Plaintiff's serious medical
needs, it is unnecessary to address these other arguments.  See Barrera-Avila v. Watts, Civil Action No.

## II.   Defendants Are Entitled to Summary Judgment on Plaintiff's Georgia Constitutional Claims

Defendants are entitled to summary judgment on Plaintiff's claims under the Georgia Constitution.  Defendants point to ample authority showing there no private cause of action like the one Plaintiff seeks to assert arising under the Georgia Constitution.  Doc. 108-1 at 32; see Howard v. Miller, 476 S.E.2d 636, 639 (Ga. Ct. App. 1996) ("[Georgia has] no equivalent to 42 U.S.C. § 1983, which gives a claim against a state officer individually for certain unconstitutional acts."); Draper v. Reynolds, 629 S.E.2d 476, 478 n.2 (Ga. Ct. App. 2006) ("Georgia does not have an equivalent to 42 U.S.C. § 1983 . . . ."); Howard, 476 S.E.2d at 639 ("We have no equivalent to 42 U.S.C. § 1983, which gives a claim against a state officer individually for certain unconstitutional acts.").  Plaintiff has not responded to this argument, and, therefore, has not pointed to any contrary authority.  Thus, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment on the Georgia constitutional claims.

## III.   Plaintiff's Claims Against Defendant Estate of Dr. Ochippinti Should Be Dismissed Under Rule 4(m)

Defendants argue dismissal of the Estate of Dr. Ochippinti would be appropriate, given it appears the Estate has not yet been served with process.  Doc. 108-1 at 35.  Plaintiff has not responded to this argument.

Rule 4(m) of the Federal Rules of Civil Procedure, which addresses the time limit for service, provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a

---

2:16-cv-141, 2017 WL 933123, at *9 (S.D. Ga. Mar. 8, 2017) ("As these rulings would dispose of all of Plaintiff's claims, the Court need not address the remaining portions of Defendants' Motion."), *report and recommendation adopted*, 2017 WL 1240763 (S.D. Ga. Mar. 31, 2017).  A preliminary review of these additional arguments indicates the arguments have merit.

specified time.  But if the plaintiff shows good cause for the failure, the court
must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4.  Courts assist inmate-plaintiffs—because they are confined and typically

indigent—in effecting Rule 4 service.  See, e.g., Fowler v. Jones, 899 F.2d 1088, 1095 (11th Cir.

1990) ("*In forma pauperis* litigants should be entitled to rely on the court officers and United

States Marshals to effect proper service where such failure is not due to fault on the litigant's

part.").  However, the Court ordinarily does not have an obligation to assist an inmate in

effecting service beyond "directing the Marshal to serve process on those parties (and their

addresses) clearly identified by the inmate-plaintiff."  Simmons v. Prison Health Servs. Inc.,

No. CV408-239, 2009 WL 2914103, at *1 (S.D. Ga. Sept. 10, 2009); see also Smith v. Belle,

321 F. App'x 838, 845 (11th Cir. 2009) (failure of prisoner proceeding *in forma pauperis* in

42 U.S.C. § 1983 action to provide current address for defendant so that process could be served,

despite being warned that failure to do so would result in dismissal, warranted dismissal of the

prisoner's claims against defendant for lack of service of process); Salas v. Tillman, 162

F. App'x 918, 923 (11th Cir. 2006) (pro se *in forma pauperis* prisoner was not entitled to a

continuance so that service could be completed on corrections officers in his civil rights claim,

where prisoner was aware of his failure to provide service but made no attempt to remedy the

service problem).

Plaintiff ultimately has the responsibility for serving Defendant Estate of Dr. Ochippinti.

Despite extensive efforts, the Marshals Service has been unable to serve Defendant Estate of Dr.

Ochippinti based on the information Plaintiff provided in his Complaint and the supplemented

addresses.  Because efforts at serving Defendant Estate of Dr. Ochippinti continue to be

unsuccessful, Plaintiff's claims against this Defendant are due for dismissal.  See Brown v.

Davis, 656 F. App'x 920, 921 (11th Cir. 2016) (finding district court did not abuse its discretion

in dismissing prisoner's § 1983 claim against an officer for lack of service where officer no longer resided at the address provided by the prisoner, prisoner did not remedy the service, and prisoner was on notice the officer had not been served for three years); see also Penton v. Nunez, No. 2:11-CV-0518, 2014 WL 4244013, at *2 (E.D. Cal. Aug. 26, 2014) (dismissing case after inability to locate and serve defendant at address provided by deputy attorney general); Williams v. Hodges, No. CIV.A H 08-2082, 2010 WL 518776, at *5 (S.D. Tex. Jan. 31, 2010) (dismissing case "because the United States Marshal has been unable to complete service of process based on the information provided by the plaintiff and the State Attorney General's Office."). Consequently, the Court should **DISMISS without prejudice** Plaintiff's claims against Defendant Estate of Dr. Ochippinti under Rule 4(m).[15]

## IV.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify an appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous

---

[15]    There may be some question as to whether the Defendants moving for summary judgment have standing to seek dismissal of the claims against the Estate of Dr. Ochippinti.  Regardless, Defendants presented the issue to the Court for consideration, and Plaintiff has failed to respond.  It is clear service on the Estate of Dr. Ochippinti is long overdue under Rule 4(m), and I would recommend the Court dismiss the claims against this Defendant sua sponte.

claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or

argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not

brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt,

203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.

2001)); see also Brown v. United States, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at

*1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of the parties' Motions for Summary Judgment, there are no

non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus,

the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for

Summary Judgment and **DENY** Plaintiff's Motion for Summary Judgment.  I also

**RECOMMEND** the Court **DISMISS without prejudice** any claims against the Estate of Dr.

Ochippinti.  I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this

case and enter the appropriate judgment and **DENY** Plaintiff *in forma pauperis* status on appeal.

I also **RECOMMEND** the Court **DENY as moot** Plaintiff's initial, non-compliant Motion for

Summary Judgment.  Doc. 93.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge

failed to address a contention raised in the Complaint must be included.  Failure to file timely,

written objections will bar any later challenge or review of the Magistrate Judge's factual

findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 2nd day of September, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA